UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **17-60301** 

18 U.S.C. § 1349
18 U.S.C. § 2
21 U.S.C. § 846
21 U.S.C. § 841(a)(1)
18 U.S.C. § 982
21 U.S.C. § 853

UNITED STATES OF AMERICA

vs.

ANDRES MENCIA,
OSCAR LUIS VENTURA-RODRIGUEZ,
NADIRA SAMPATH-GRANT, and
JOHN MENSAH,

     Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

### The Medicare Program

1. The Medicare Program (Medicare) was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services (CMS), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare programs covering different types of benefits were separated into different program "parts." Part B of the Medicare Program covered, among other things, medical services

provided by physicians, medical clinics, and other qualified health care providers, as well as medications, including various inhalation medications, prescribed incident to such services. Part D of the Medicare Program subsidized the costs of prescription drugs for Medicare beneficiaries.

### The Medicare Part B Program

3. Medicare Part B was administered in Florida by First Coast Service Options, a company that contracted with CMS to receive, adjudicate, process, and pay certain Part B claims.

4. Payments under the Medicare Program were often made directly to the physician, medical clinic, or other qualified provider of the medical goods or services, rather than to the beneficiary. This occurred when the provider accepted assignment of the right to payment from the beneficiary. In that case, the provider submitted the claim to Medicare for payment, either directly or through a billing company.

5. Physicians, medical clinics, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider who was issued a Medicare provider number was able to file bills, known as "claims," with Medicare to obtain reimbursement for services provided to beneficiaries. The claim form was required to contain certain important information, including: (a) the Medicare beneficiary's name and Health Insurance Claim Number (HICN); (b) a description of the health care benefit, item, or service that was provided or supplied to the beneficiary; (c) the billing codes for the benefit, item, or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; and (e) the name of the referring physician or other health care provider, as well as a unique identifying number, known either as the Unique Physician Identification Number (UPIN) or National Provider Identifier (NPI). The claim form could be submitted in hard copy or electronically.

6. When a claim was submitted to Medicare, the provider certified that the contents of the form were true, correct, complete, and that the form was prepared in compliance with the laws and regulations governing the Medicare program. The provider further certified that the services being billed were medically necessary and were in fact provided as billed.

7. Pursuant to federal statutes and regulations, Medicare only paid for health care benefits, items or other services that were medically necessary and ordered by a licensed doctor or other licensed, qualified health care provider.

### The Medicare Part D Program

8. In order to receive Part D benefits, a beneficiary had to be enrolled in a Medicare drug plan. Medicare drug plans were operated by private companies approved by Medicare. Those companies were often referred to as drug plan "sponsors." A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription.

9. A pharmacy could participate in Part D by entering a retail network agreement directly with a plan or with one or more Pharmacy Benefit Managers (PBMs). A PBM acted on behalf of one or more Medicare drug plans. Through a plan's PBM, a pharmacy could join the plan's network. When a Part D beneficiary presented a prescription to a pharmacy, the pharmacy submitted a claim either directly to the plan or to a PBM that represented the beneficiary's Medicare drug plan. The plan or PBM determined whether the pharmacy was entitled to payment for each claim and periodically paid the pharmacy for outstanding claims. The drug plan's sponsor reimbursed the PBM for its payments to the pharmacy.

10. A pharmacy could also submit claims to a Medicare drug plan to whose network the pharmacy did not belong. Submission of such out-of-network claims was not common and often resulted in smaller payments to the pharmacy by the drug plan sponsor.

11. Medicare, through CMS, compensated the Medicare drug plan sponsors. Medicare paid the sponsors a monthly fee for each Medicare beneficiary of the sponsors' plans. Such payments were called capitation fees. The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions. In addition, in some cases where a sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

12. Medicare and Medicare drug plan sponsors were "health care benefit program[s]," as defined by Title 18, United States Code, Section 24(b).

**The Medicaid Program**

13. The Medicaid Program (Medicaid) was a jointly funded program between federal and state governments that provided medical assistance and health coverage for categories of individuals whose income and resources were insufficient to meet the costs of medical services.

14. The Florida Medicaid Program was authorized by Chapter 409, Florida State Statutes, and Chapter 59G, Florida Administrative Code. Medicaid was administered by CMS and the State of Florida Agency for Health Care Administration (AHCA.)

15. In Florida, Medicaid contracted with a private company to pay claims. This company was referred to as the Medicaid fiscal agent. The fiscal agent also performed a variety of other functions for Medicaid including enrollment of providers and management of the recipient eligibility system. In addition, it provided management of pharmacy benefits through the PBM

4

vendor. On July 1, 2008, Electronic Data Systems (EDS) became the fiscal agent for the Medicaid program in Florida. On March 12, 2010, EDS changed its name to HP Enterprises Services, LLC.

16. Medicaid reimbursement for prescribed drug services was on a fee-for-service basis. The Florida Point of Sale (POS) System was the system that processed drug claims. Pharmacies which did not use POS processing could submit Medicaid claims via electronic media (batch) to take advantage of speed and accuracy in processing. Pharmacies submitted electronic claims themselves or chose a billing agent that offered electronic claim submission services.

17. Medicaid also offered electronic funds transfer system to pay claims submitted by pharmacies. Any pharmacy which utilized the electronic funds transfer system was certifying with each use of the electronic funds transfer system that the claim(s) for which the pharmacy were being paid was in compliance with the provisions found on the claim form and with all federal and state laws.

18. Medicare and Medicaid were each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

**The Defendants and Related Companies**

19. Adult & Geriatric Institute of Florida, Inc, d/b/a AGI Medical & Dental (AGI) was a corporation organized under the laws of the State of Florida located at 1608 E. Commercial Blvd, Oakland Park, FL, that purportedly provided medical services to Medicare and Medicaid beneficiaries.

20. Imperial Point Pharmacy (Imperial) was a corporation organized under the laws of the State of Florida located at 6401 N Federal Hwy, Fort Lauderdale, FL, 33308 that purportedly provided prescription drugs to Medicare and Medicaid beneficiaries.

21. Defendant **ANDRES MENCIA,** a resident of Broward County, was a licensed medical doctor and the owner and medical physician provider for AGI.

22. Defendant **OSCAR LUIS VENTURA-RODRIGUEZ**, a resident of Broward County, was an office staff member at AGI.

23. Defendant **NADIRA SAMPATH-GRANT**, a resident of Broward County, was an office staff member at AGI.

24. Defendant **JOHN MENSAH**, a resident of Broward County, was an office staff member at AGI.

<div style="text-align:center">

### COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

</div>

1. Paragraphs 1 through 24 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. Beginning in or around January 2015, through in or around October 2017, in Broward County, in the Southern District of Florida, and elsewhere, the defendants,

<div style="text-align:center">

**ANDRES MENCIA,**
**OSCAR LUIS VENTURA-RODRIGUEZ,**
**NADIRA SAMPATH-GRANT,**
**and**
**JOHN MENSAH,**

</div>

did knowingly, that is with the intent to further the objects of the conspiracy, and willfully combine, conspire, confederate, and agree with each other and others, known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a. to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicaid, and to obtain, by means of materially false and fraudulent

6

pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

  b. to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

3. It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare and Medicaid; (b) concealing the submission of false and fraudulent claims to Medicare and Medicaid; and (c) diverting fraud proceeds for the personal use and benefit, the use and benefit of others, and to further the fraud.

## Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others:

4. **ANDRES MENCIA, OSCAR LUIS VENTURA-RODRIGUEZ, NADIRA SAMPATH-GRANT, JOHN MENSAH** and others elicited and received cash payments from Medicare and Medicaid beneficiaries in exchange for purported medical consultation.

5. After the purported medical consultations, **ANDRES MENCIA, OSCAR LUIS VENTURA-RODRIGUEZ, NADIRA SAMPATH-GRANT, and JOHN MENSAH** falsely certified medical records by indicating they had provided medical services on behalf of AGI to Medicare and Medicaid beneficiaries.

6. **ANDRES MENCIA, OSCAR LUIS VENTURA-RODRIGUEZ, NADIRA SAMPATH-GRANT, JOHN MENSAH** and their co-conspirators issued prescriptions to Medicare and Medicaid beneficiaries for prescription drugs without first determining that the prescriptions were medically necessary.

7. **ANDRES MENCIA, OSCAR LUIS VENTURA-RODRIGUEZ, NADIRA SAMPATH-GRANT** and **JOHN MENSAH** submitted and caused the submission of false and fraudulent claims to Medicare and Medicaid for medical consultations they did not provide to Medicare and Medicaid beneficiaries.

8. **ANDRES MENCIA, OSCAR LUIS VENTURA-RODRIGUEZ, NADIRA SAMPATH-GRANT, JOHN MENSAH** and their co-conspirators submitted and caused Imperial and other pharmacies to submit, via interstate wire transmissions, claims to Medicare and Medicaid prescription drug plan sponsors that falsely and fraudulently represented that prescription drugs were medically necessary.

9. As a result of such false and fraudulent claims, Medicare and Medicaid prescription drug plan sponsors, through their PBMs, made payments funded by Medicare and Medicaid to Imperial and other pharmacies.

10. **ANDRES MENCIA, OSCAR LUIS VENTURA-RODRIGUEZ, NADIRA SAMPATH-GRANT, JOHN MENSAH** and their co-conspirators used the proceeds from the

8

false and fraudulent Medicare and Medicaid claims, as well as cash payments, for their own use, the use of others, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
**Conspiracy to Dispense Controlled Substance**
**(21 U.S.C. § 846)**

Beginning in or around January 2015, through in or around October 2017, in Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**ANDRES MENCIA,**
**OSCAR LUIS VENTURA-RODRIGUEZ,**
**NADIRA SAMPATH-GRANT,**
and
**JOHN MENSAH,**

knowingly and willfully combined, conspired, and agreed with each other and others known and unknown to the Grand Jury, to dispense a controlled substance without authorization by law, in violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846.

Pursuant to Title 21, United States Code, Section 841(b)(1)(C), it is further alleged that this violation involved a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of Oxycodone.

## COUNTS 3-6
**Dispensing a Controlled Substance**
**(21 U.S.C. § 841 (a)(1))**

On or about the dates specified below as to each count, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**OSCAR LUIS VENTURA-RODRIGUEZ,**

knowingly and intentionally dispensed a controlled substance, in violation of Title 21, United

States Code, Section, 841(a)(1); and Title 18, United States Code, Section 2:

| Count | Date | Controlled Substance |
|---|---|---|
| 3 | March 17, 2017 | 90 Percocet pills |
| 4 | April 20, 2017 | 120 Percocet pills |
| 5 | June 23, 2017 | 220 Percocet pills |
| 6 | July 25, 2017 | 240 Percocet pills |

Pursuant to Title 21, United States Code, Section 841(b)(1)(C), it is further alleged that this violation involved a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of Oxycodone.

### COUNTS 7-9
### Dispensing a Controlled Substance
### (21 U.S.C. § 841(a)(1))

On or about the dates specified below as to each count, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**NADIRA SAMPATH-GRANT**,

knowingly and intentionally dispensed a controlled substance, in violation of Title 21, United States Code, Section, 841(a)(1); and Title 18, United States Code, Section 2:

| Count | Date | Controlled Substance |
|---|---|---|
| 7 | May 24, 2017 | 180 Percocet pills |
| 8 | August 24, 2017 | 220 Percocet pills |
| 9 | September 22, 2017 | 240 Percocet pills |

Pursuant to Title 21, United States Code, Section 841(b)(1)(C), it is further alleged that this violation involved a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of Oxycodone.

## COUNT 10
### Dispensing a Controlled Substance
### (21 U.S.C. § 841(a)(1))

On or about July 25, 2017, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**JOHN MENSAH,**

knowingly and intentionally dispensed a controlled substance, in violation of Title 21, United States Code, Section, 841(a)(1); and Title 18, United States Code, Section 2:

Pursuant to Title 21, United States Code, Section 841(b)(1)(C); it is further alleged that this violation involved a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of Oxycodone.

## FORFEITURE
### (18 U.S.C. § 982 and 21 U.S.C. § 853)

1. The allegations contained in the counts of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of certain property in which **ANDRES MENCIA, OSCAR LUIS VENTURA-RODRIGUEZ, NADIRA SAMPATH-GRANT**, and **JOHN MENSAH** have an interest.

2. Upon conviction of Count 1, as alleged in this Indictment, the defendants, **ANDRES MENCIA, OSCAR LUIS VENTURA-RODRIGUEZ, NADIRA SAMPATH-GRANT,** and **JOHN MENSAH,** shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

3. Upon conviction of any of the violations alleged in Counts 2 through 10 of this Indictment, the convicted defendants shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any property constituting or derived from any proceeds which such

States Code, Section 853, any property constituting or derived from any proceeds which such defendant obtained, directly or indirectly as the result of such violation, and any property which the defendant used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such violation.

4. If the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property and in addition to seek a court order requiring the defendants to return any such property to the jurisdiction of the court for seizure and forfeiture.

All pursuant to Title 18, United States Code, Sections 982(a)(7), and the procedures outlined in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

FC

BENJAMIN G. GREENBERG
ACTING UNITED STATES ATTORNEY

MICHAEL E. GILFARB
ASSISTANT U.S. ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. _____ |
|---|---|

vs.

ANDRES MENCIA, et al.,,

## CERTIFICATE OF TRIAL ATTORNEY*

**Defendants.**
_____ /

**Superseding Case Information:**

**Court Division**: (Select One)

| | | | | |
|---|---|---|---|---|
| ____ | Miami | ____ | Key West | |
| _X_ | FTL | ____ | WPB | ____ FTP |

New Defendant(s)           Yes ____    No ____
Number of New Defendants   ____
Total number of counts     ____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:     (Yes or No)        YES
   List language and/or dialect        SPANISH & CREOLE

4. This case will take 5 days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                          (Check only one)

   | I:  | 0 to 5 days     | _X_ | Petty   | ____ |
   | II: | 6 to 10 days    | ____ | Minor   | ____ |
   | III:| 11 to 20 days   | ____ | Misdem. | ____ |
   | IV: | 21 to 60 days   | ____ | Felony  | _X_ |
   | V:  | 61 days and over| ____ |         |      |

6. Has this case been previously filed in this District Court?   (Yes or No)   NO
   If yes:
   Judge: _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   NO
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____ District of _____

   Is this a potential death penalty case? (Yes or No)   NO

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   ____ Yes   _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?   ____ Yes   _X_ No

                                    _____
                                    MICHAEL E. GILFARB
                                    ASSISTANT UNITED STATES ATTORNEY
                                    FLORIDA BAR No. 957636

*Penalty Sheet(s) attached                                           REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: ANDRES MENCIA

**Case No**:

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**     Ten (10) Years' Imprisonment

Count #: 2

Conspiracy to Dispense Controlled Substances

Title 21, United States Code, Section 846

**\*Max. Penalty:**     Twenty (20) Years' Imprisonment
**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: OSCAR LUIS VENTURA-RODRIGUEZ

**Case No**: _____

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**   Ten (10) Years' Imprisonment

Count #: 2

Conspiracy to Dispense Controlled Substances

Title 21, United States Code, Section 846

**\* Max. Penalty:**   Twenty (20) Years' Imprisonment

Counts #: 3-6

Dispensing a Controlled Substance

Title 21, United States Code, Section 841

**\*Max. Penalty:**   Twenty (20) Years' Imprisonment as To Each Count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: NADIRA SAMPATH-GRANT

**Case No**: _____

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**      Ten (10) Years' Imprisonment

Count #: 2

Conspiracy to Dispense Controlled Substances

Title 21, United States Code, Section 846

**\* Max. Penalty:**      Twenty (20) Years' Imprisonment

Counts #: 7-9

Dispensing a Controlled Substance

Title 21, United States Code, Section 841

**\*Max. Penalty:**      Twenty (20) Years' Imprisonment as To Each Count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**


## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: JOHN MENSAH

**Case No**: _____

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**    Ten (10) Years' Imprisonment

Count #: 2

Conspiracy to Dispense Controlled Substances

Title 21, United States Code, Section 846

**\* Max. Penalty:**    Twenty (20) Years' Imprisonment

Count #: 10

Dispensing a Controlled Substance

Title 21, United States Code, Section 841

**\*Max. Penalty:**    Twenty (20) Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**