FILED by _____ D.C.

MAY 03 2018

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. __17 Cr-60301-DIMITROULEAS/ SNOW(s)(s)(s)(s)(s)__

18 U.S.C. § 1349
21 U.S.C. § 846
21 U.S.C. § 841(a)(1)
18 U.S.C. § 1957(a)
31 U.S.C. § 5324(a)(3), (d)(2)
18 U.S.C. § 2
18 U.S.C. § 982
21 U.S.C. § 853
31 U.S.C. § 5317(c)(1)

**UNITED STATES OF AMERICA**

**vs.**

**ANDRES MENCIA,**

**Defendant.**

_____/

## FIFTH SUPERSEDING INDICTMENT

The Grand Jury charges that:

### The Medicare Program

1.     The Medicare Program (Medicare) was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services (CMS), oversaw and administered Medicare.   Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.     Medicare programs covering different types of benefits were separated into different program "parts." Part B of the Medicare Program covered, among other things, medical services

provided by physicians, medical clinics, and other qualified health care providers, as well as medications, including various inhalation medications, prescribed incident to such services. Part D of the Medicare Program subsidized the costs of prescription drugs for Medicare beneficiaries.

### The Medicare Part B Program

3.      Medicare Part B was administered in Florida by First Coast Service Options, a company that contracted with CMS to receive, adjudicate, process, and pay certain Part B claims.

4.      Payments under the Medicare Program were often made directly to the physician, medical clinic, or other qualified provider of the medical goods or services, rather than to the beneficiary. This occurred when the provider accepted assignment of the right to payment from the beneficiary. In that case, the provider submitted the claim to Medicare for payment, either directly or through a billing company.

5.      Physicians, medical clinics, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider who was issued a Medicare provider number was able to file bills, known as "claims," with Medicare to obtain reimbursement for services provided to beneficiaries. The claim form was required to contain certain important information, including: (a) the Medicare beneficiary's name and Health Insurance Claim Number (HICN); (b) a description of the health care benefit, item, or service that was provided or supplied to the beneficiary; (c) the billing codes for the benefit, item, or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; and (e) the name of the referring physician or other health care provider, as well as a unique identifying number, known either as the Unique Physician Identification Number (UPIN) or National Provider Identifier (NPI). The claim form could be submitted in hard copy or electronically.

6.      When a claim was submitted to Medicare, the provider certified that the contents of the form were true, correct, complete, and that the form was prepared in compliance with the laws and regulations governing the Medicare program. The provider further certified that the services being billed were medically necessary and were in fact provided as billed.

7.      Pursuant to federal statutes and regulations, Medicare only paid for health care benefits, items or other services that were medically necessary and ordered by a licensed doctor or other licensed, qualified health care provider.

### The Medicare Part D Program

8.      In order to receive Part D benefits, a beneficiary had to be enrolled in a Medicare drug plan. Medicare drug plans were operated by private companies approved by Medicare.  Those companies were often referred to as drug plan "sponsors." A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription.

9.      A pharmacy could participate in Part D by entering a retail network agreement directly with a plan or with one or more Pharmacy Benefit Managers (PBMs).  A PBM acted on behalf of one or more Medicare drug plans. Through a plan's PBM, a pharmacy could join the plan's network.   When a Part D beneficiary presented a prescription to a pharmacy, the pharmacy submitted a claim either directly to the plan or to a PBM that represented the beneficiary's Medicare drug plan. The plan or PBM determined whether the pharmacy was entitled to payment for each claim and periodically paid the pharmacy for outstanding claims. The drug plan's sponsor reimbursed the PBM for its payments to the pharmacy.

10.     A pharmacy could also submit claims to a Medicare drug plan to whose network the pharmacy did not belong.  Submission of such out-of-network claims was not common and often resulted in smaller payments to the pharmacy by the drug plan sponsor.

11.     Medicare, through CMS, compensated the Medicare drug plan sponsors.  Medicare paid the sponsors a monthly fee for each Medicare beneficiary of the sponsors' plans.  Such payments were called capitation fees. The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions. In addition, in some cases where a sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

12.     Medicare and Medicare drug plan sponsors were "health care benefit program[s]," as defined by Title 18, United States Code, Section 24(b).

### The Medicaid Program

13.     The Medicaid Program (Medicaid) was a jointly funded program between federal and state governments that provided medical assistance and health coverage for categories of individuals whose income and resources were insufficient to meet the costs of medical services.

14.     The Florida Medicaid Program was authorized by Chapter 409, Florida State Statutes, and Chapter 59G, Florida Administrative Code. Medicaid was administered by CMS and the State of Florida Agency for Health Care Administration (AHCA.)

15.     In Florida, Medicaid contracted with a private company to pay claims. This company was referred to as the Medicaid fiscal agent. The fiscal agent also performed a variety of other functions for Medicaid including enrollment of providers and management of the recipient eligibility system. In addition, it provided management of pharmacy benefits through the PBM

vendor. On July 1, 2008, Electronic Data Systems (EDS) became the fiscal agent for the Medicaid program in Florida. On March 12, 2010, EDS changed its name to HP Enterprises Services, LLC.

16.     Medicaid reimbursement for prescribed drug services was on a fee-for-service basis. The Florida Point of Sale (POS) System was the system that processed drug claims. Pharmacies which did not use POS processing could submit Medicaid claims via electronic media (batch) to take advantage of speed and accuracy in processing. Pharmacies submitted electronic claims themselves or chose a billing agent that offered electronic claim submission services.

17.     Medicaid also offered electronic funds transfer system to pay claims submitted by pharmacies. Any pharmacy which utilized the electronic funds transfer system was certifying with each use of the electronic funds transfer system that the claim(s) for which the pharmacy were being paid was in compliance with the provisions found on the claim form and with all federal and state laws.

18.     Medicare and Medicaid were each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

### The Defendants and Related Companies

19.     Adult & Geriatric Institute of Florida, Inc, d/b/a AGI Medical & Dental (AGI) was a corporation organized under the laws of the State of Florida located at 1608 E. Commercial Blvd, Oakland Park, Florida, that purportedly provided medical services to Medicare and Medicaid beneficiaries.

20.     Defendant **ANDRES MENCIA**, a resident of Broward County, was a licensed medical doctor and the owner and medical physician provider for AGI.

21.     Imperial Point Pharmacy (Imperial) was a corporation organized under the laws of the State of Florida located at 6401 N Federal Hwy, Fort Lauderdale, Florida, 33308 that

purportedly provided prescription drugs to Medicare and Medicaid beneficiaries.

22.     Oscar Luis Ventura-Rodriguez, a resident of Broward County, was an office staff member at AGI.

23.     Nadira Sampath-Grant, a resident of Broward County, was an office staff member at AGI.

24.     John Mensah, a resident of Broward County, was an office staff member at AGI.

## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1.     The General Allegations section of this Fifth Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     Beginning in or around January 2014, through in or around October 2017, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**ANDRES MENCIA,**

did willfully, that is with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with Oscar Luis Ventura-Rodriguez, Nadira Sampath-Grant, John Mensah, and others, known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a.     to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, and Medicare drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection

with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

b.      to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

3.      It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare, Medicaid, and Medicare drug plan sponsors; (b) concealing the submission of false and fraudulent claims to Medicare, Medicaid, and Medicare drug plan sponsors; and (c) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

## Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others:

4.      **ANDRES MENCIA,** Oscar Luis Ventura-Rodriguez, Nadira Sampath-Grant, John Mensah and others elicited and received cash payments from patients, or billed Medicare and Medicaid beneficiaries, in exchange for purported medical consultation.

5.     After the purported medical consultations, **ANDRES MENCIA,** Oscar Luis Ventura-Rodriguez, Nadira Sampath-Grant, and John Mensah falsely certified, and caused to be falsely certified, medical records by indicating they had provided medical services on behalf of AGI to Medicare and Medicaid beneficiaries.

6.     **ANDRES MENCIA,** Oscar Luis Ventura-Rodriguez, Nadira Sampath-Grant, and John Mensah and their co-conspirators issued, and caused to be issued, prescriptions to Medicare and Medicaid beneficiaries for prescription drugs without first determining that the prescriptions were medically necessary.

7.     **ANDRES MENCIA,** Oscar Luis Ventura-Rodriguez, Nadira Sampath-Grant, and John Mensah submitted and caused the submission, via interstate wire transmissions, of false and fraudulent claims to Medicare and Medicaid for medical consultations they did not provided to Medicare and Medicaid beneficiaries.

8.     **ANDRES MENCIA,** Oscar Luis Ventura-Rodriguez, Nadira Sampath-Grant, and John Mensah and their co-conspirators submitted and caused Imperial and other pharmacies to submit, via interstate wire transmissions, claims to Medicare, Medicaid, and Medicare drug plan sponsors that falsely and fraudulently represented that prescription drugs were medically necessary.

9.     As a result of such false and fraudulent claims, Medicare, Medicaid, and Medicare drug plan sponsors, through their PBMs, made payments funded by Medicare and Medicaid to Imperial and other pharmacies.

10.     **ANDRES MENCIA,** Oscar Luis Ventura-Rodriguez, Nadira Sampath-Grant, and John Mensah and their co-conspirators used the proceeds from the false and fraudulent Medicare

and Medicaid claims, as well as cash payments, for their own use, the use of others, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### Conspiracy to Dispense Controlled Substance
### (21 U.S.C. § 846)

Beginning in or around January 2014, through in or around October 2017, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**ANDRES MENCIA,**

a registrant authorized to dispense controlled substances, did knowingly and willfully combine, conspire, and agree with Oscar Luis Ventura-Rodriguez, Nadira Sampath-Grant, John Mensah and others known and unknown to the Grand Jury, to distribute and dispense a controlled substance, outside the scope of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846.

Pursuant to Title 21, United States Code, Section 841(b)(1)(C), it is further alleged that this violation involved a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of Oxycodone.

## COUNT 3
### Dispensing a Controlled Substance
### (21 U.S.C. § 841(a)(1))

On or about August 29, 2014, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**ANDRES MENCIA,**

a registrant authorized to dispense controlled substances, did knowingly and intentionally distribute and dispense a controlled substance, outside the scope of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Section, 841(a)(1); and Title 18, United States Code, Section 2:

Pursuant to Title 21, United States Code, Section 841(b)(1)(C); it is further alleged that this violation involved a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of Oxycodone.

Pursuant to Title 21, United States Code, Section 841(b)(1)(C), it is further alleged that the death of J.H. resulted from the use of this substance.

## COUNTS 4-10
### Money Laundering
### (18 U.S.C § 1957(a))

On or about the dates set forth below as to each count, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

### ANDRES MENCIA,

did knowingly engage and attempt to engage in a monetary transaction affecting interstate and foreign commerce by through or to a financial institution, in criminally derived property greater than $10,000, and such property having been derived from specified unlawful activity:

| Count | Approx. Date of Monetary Transaction | Description of Financial Transaction |
|-------|--------------------------------------|--------------------------------------|
| 4 | 06/15/2015 | Transfer in the approximate amount of $10,952.20 via Check #78279 drawn on BB&T Account no. X6401 and made payable to Connie Cole for the purchase of a residence located 16532 Bridlewood Circle, Delray Beach, FL 33445 |
| 5 | 7/30/2015 | Transfer in the approximate amount of $437,614.06 via wire transfer drawn on Wells Fargo Account no. X2487 and made payable to Watermark Realty, Inc. for the purchase of a residence located 4750 NE 23rd Ave., Ft. Lauderdale, FL 33308 |

| Count | Approx. Date of Monetary Transaction | Description of Financial Transaction |
|---|---|---|
| 6 | 09/15/2015 | Transfer in the approximate amount of $10,952.20 via Check #78698 drawn on BB&T Account no. X6401 and made payable to Connie Cole for the purchase of a residence located 16532 Bridlewood Circle, Delray Beach, FL 33445 |
| 7 | 11/16/2015 | Transfer in the approximate amount of $10,952.20 via Check #78907 drawn on BB&T Account no. X6401 and made payable to Connie Cole for the purchase of a residence located 16532 Bridlewood Circle, Delray Beach, FL 33445 |
| 8 | 02/19/2016 | Transfer in the approximate amount of $11,359.72 via Check #79287 drawn on BB&T Account no. X6401 and made payable to Connie Cole for the purchase of a residence located 16532 Bridlewood Circle, Delray Beach, FL 33445 |
| 9 | 08/08/2016 | Transfer in the approximate amount of $10,952.20 via Check #79869 drawn on BB&T Account no. X6401 and made payable to Connie Cole for the purchase of a residence located 16532 Bridlewood Circle, Delray Beach, FL 33445 |
| 10 | 11/15/2016 | Transfer in the approximate amount of $10,952.20 via Check #80121 drawn on BB&T Account no. X6401 and made payable to Connie Cole for the purchase of a residence located 16532 Bridlewood Circle, Delray Beach, FL 33445 |

It is further alleged that the specified unlawful activity is conspiracy to commit health care fraud and wire fraud in violation of Title 18, United States Code, Section 1349, and conspiracy to dispense a controlled substance, in violation of Title 21, United States Code, Section 846.

In violation of Title 18, United States Code, Sections 1957(a) and 2.

## COUNT 11
### Structuring to Avoid Reporting Requirements
### (31 U.S.C. § 5324(a)(3) and (d)(2))

1.    A "currency transaction report" (CTR) is a report that is submitted on United States Department of Treasury (Treasury), Financial Crimes Enforcement Network Form 104.  A domestic

financial institution is required by federal law to file a CTR with Treasury for each financial transaction that involves United States currency in excess of $10,000.  Such financial transaction include deposits, withdrawals, or exchanges of currency, or other transactions involving the physical transfer of currency from one person to another.

2.       Between on or about April 15, 2015 and April 17, 2015,  in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**ANDRES MENCIA,**

did knowingly and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), and any regulation prescribed thereunder, structure and assist in structuring, and attempt to structure and assist in structuring any transactions with one or more domestic financial institutions, to wit; cash deposits into the accounts and domestic financial institutions as set forth below:

| Approximate Date of Transaction | Domestic Financial Institution and Account Number | Transaction |
|---|---|---|
| April 16, 2015 | Wells Fargo XXXXXXXXX2487 | $9,000 deposit |
| April 17, 2015 | BB&T XXXXXXXXX6517 | $9,000 deposit |
| April 17, 2015 | BB&T XXXXXXXXX6401 | $7,167 deposit |
| April 17, 2015 | Wells Fargo XXXXXXXXX2487 | $9,000 deposit |

In violation of Title 31, United States Code, Section 5324(a)(3) and 5324(d)(2), and Title 18, United States Code, Section 2.

It is further alleged that, pursuant to Title 31, United States Code, Section 5324(d)(2), the offense conduct occurred as part of a pattern of illegal activity involving more than one hundred thousand dollars ($100,000.00) in a twelve (12) month period.

## **FORFEITURE**
## **(18 U.S.C. § 982, 21 U.S.C. § 853, and 31 U.S.C. § 5317(c)(1))**

1.      The allegations contained in this Fifth Superseding Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of certain property in which **ANDRES MENCIA** has an interest.

2.      Upon conviction of Count 1, as alleged in this Fifth Superseding Indictment, the defendant, **ANDRES MENCIA,** shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

3.      Upon conviction of any of the violations alleged in Counts 2 or 3 of this Fifth Superseding Indictment, the convicted defendants shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any property constituting or derived from any proceeds which such defendant obtained, directly or indirectly as the result of such violation, and any property which the defendant used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such violation.

4.      Upon conviction of any of the violations alleged in Counts 5 through 10 of this Fifth Superseding Indictment, the defendant, **ANDRES MENCIA,** shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense or any other property traceable to such property.

5.      Upon conviction of any of the violations alleged in Counts 11 through 14 of this Fifth Superseding Indictment, the defendant, **ANDRES MENCIA,** shall forfeit to the United States, pursuant to Title 31, United States Code, Sections 5317(c)(1), all of his right, title and

interest in all property, real or personal, which was involved in the offense and any property traceable thereto including those listed in paragraphs 6 and 7 of this section.

6.      The property subject to forfeiture includes, but is not limited to, the following:

a.      All funds on deposit in Wells Fargo Account No. XXXXXXXXX2487;

b.      All funds on deposit in Branch Banking & Trust Company Account No. XXXXXXXXX6401;

c.      Real property located at 4750 NE 23rd Avenue, Fort Lauderdale, FL 33308;

d.      Real property located at 16532 Bridlewood Circle, Delray Beach, FL 33445; and

e.      A money judgment in the amount of $3,300,000 which represents the property involved in the offense.

7.      If the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with a third party;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property and in addition to seek a court order requiring the defendants to return any such property to the jurisdiction of the court for seizure and forfeiture.

All pursuant to Title 18, United States Code, Sections 982(a)(1) and (a)(7) and Title 21, United States Code, Section 853 and Title 31, United States Code, Section 5317(c)(1).

A TRUE BILL

F

BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY

MICHAEL E. GILFARB
ASSISTANT U.S. ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO.   17-CR-60301-WPD(s)(s)(s)(s)(s) |
|---|---|

v.

ANDRES MENCIA,
                    Defendant.
_____/

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

**Court Division**: (Select One)

| | | New Defendant(s)          Yes _____  No __X__ |
|---|---|---|
| _____ Miami | _____ Key West | Number of New Defendants            0 |
| __X__ FTL | _____ WPB _____ FTP | Total number of counts            14 |

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:     (Yes or No)     YES
     List language and/or dialect    SPANISH

4.   This case will take     12     days for the parties to try.

5.   Please check appropriate category and type of offense listed below:

     (Check only one)                         (Check only one)

| I | 0 to 5 days | _____ | Petty | _____ |
|---|---|---|---|---|
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | __X__ | Misdem. | _____ |
| IV | 21 to 60 days | _____ | Felony | _____ |
| V | 61 days and over | _____ | | |

6.   Has this case been previously filed in this District Court?   (Yes or No)    YES
If yes:
Judge:                                   Case No.    17-CR-60301-WPD
(Attach copy of dispositive order)
Has a complaint been filed in this matter?     (Yes or No)    NO
If yes:
Magistrate Case No.
Related Miscellaneous numbers:
Defendant(s) in federal custody as of
Defendant(s) in state custody as of
Rule 20 from the District of
Is this a potential death penalty case? (Yes or No)     NO

7.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    Yes _____    No   __X__

MICHAEL E. GILFARB
ASSISTANT UNITED STATES ATTORNEY
FL Bar No. 957836

*Penalty Sheet(s) attached                                    REV 5/3/17

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: ANDRES MENCIA

**Case No**:  17-CR-60301-DIMITROULEAS(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**      Twenty (20) Years' Imprisonment

Count #: 2

Conspiracy to Dispense Controlled Substances

Title 21, United States Code, Section 846

**\*Max. Penalty:**      Twenty (20) Years' Imprisonment

Count #: 3

Dispensing a Controlled Substance

Title 21, United States Code, Section 841(a)(1)

**\*Max. Penalty:**      Life Imprisonment

Counts #: 4-10

Money Laundering

Title 18, United States Code, Section 1957(a)

**\*Max. Penalty:**      Ten (10) Years' Imprisonment as to Each Count

Counts #: 11-14

Structuring to Avoid Reporting Requirements

Title 31, United States Code, Section 5324(a)(1) and (d)(2)

**\*Max. Penalty:**      Ten (10) Years' Imprisonment
**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**